E-Pass Technologies v. Microsoft and Compact Computer, now known as Hewlett-Packard, 06-1604. Mr. Weiss. Thank you. May it please the Court, my name is Stephen Weiss, and I'm Counselor for E-Pass Technologies. The decision in the Court below focused on Claim 19 of the 311 Act. Claim 19 deals with verification of personal signature. The word signature in Claim 19 appears three times. Each time it appears as the adjective personal. This is a comparison of a personal signature. The term personal signature appears 28 times in the Act specification. The District Court, in its summary judgment decision, construed verification of personal signature as if it meant verification of the card or identification of the card. Specifically, in the District Court's summary judgment decision, on page 9 at the top, the District Court said that mere identification of the user or giving the user access to data because personal signature was correctly compared is not sufficient because you don't know what card or what device is being used. But there is nothing in the specification, and certainly nothing in the claim language of Claim 19, that deals with identification of a particular card. It only deals with the personal signature. Mr. Weiss, in looking at the decision of the District Court, you are correct that the term verifying card is used, but I must admit I read that as a shorthand because if you look at a number of places at pages 31 through 34, it does specifically refer to verifying use of said card. For example, at the top of page 9 and on page 10 it says verifying use of said card. Your argument, you read the brief, was that the District Court construed this as a verifying the card limitation, but that's not what the Court did. It referred to verifying use of the card. If I were to point it out at the top of page 9, and if I could just read from page 9 of the Court's opinion, it says, quote, a user might select and display data using any number of devices, including, for example, a laptop computer. Thus, the act of comparison, while verifying access by the user, in other words, verifying who the user is, to a particular account or data source, does not verify use of said card as required by the claim language. So what he did was he took the verification of the personal signature, the person, the user, to mean a verification of the device because he specifically says that verifying access by the user, the identity of the user, does not satisfy the limitation of the claim. So clearly, in his decision, he determined that you must verify the identity of the card. But he's referring to the claim language. He says does not verify use of said card as required by the claim. He's not just saying verification of a card. But he specifically says in this paragraph that although you verify the access by the user, it's not sufficient to satisfy the claim language. But the whole purpose of the claim is to verify the personal identity of the user. It's the personal signature of the user. Well, he's talking about verifying access to a computer password, something like that. Well, that's what Claim 19 is. Claim 19 talks about storing the personal signature, the personal signature of the user, at a central database. But it's talking about verifying use of the card by the user. Right? Right. And I think what he's saying is that what happens here in the accused device isn't verifying use of a card by a user. Yes, Your Honor. You don't verify use. You don't verify the card. You do verify use. If you get, I'll give you an example. If you get access to the data source by identifying yourself with a personal signature that had previously been stored at a central data source, then you're verifying the personal signature of the user, but you're not verifying which device is being used. Is it my device? Is it Your Honor's device? Is it someone else's device? You're not verifying the card itself. In our normal use of credit cards, we come across that one. Sometimes they compare the signature of the card, and then they ask for the card identification number. Is the HP device a card? Well, the prior decision of this court in EPAS 2 said that literally it is not. So, Your Honor, there's collateral on this topic with respect to literal. But the same decision said it leaves open the doctrine of equivalence. Both the Northern District of California and Judge Jensen's decision and the Federal Circuit's recent opinion in EPAS 2 said that the doctrine of equivalence is something that we need not address. So there is collateral estoppel with respect to literal infringement of the term card, but there is no collateral estoppel with respect to the doctrine of equivalence. Have you argued all the aspects of equivalent infringement in this case? I don't think I saw it in your brief. Am I wrong? What we argued, Your Honor, in the court below was we opposed the motion for summary judgment, and we did state that the doctrine of equivalence in the court below we argued it's either literal or the doctrine of equivalence. Obviously, after EPAS 2 came down with this decision, there's collateral estoppel with respect to literal infringement of the term card, but not with respect to the doctrine of equivalence. And there's the opinion of Professor LaPorter, there's the opinion of Professor Johnson, the Microsoft expert, and there's an issue of fact as to whether or not the card or the HP device is an equivalent. There's an issue of fact whether or not it's being used by a sufficient number of people to satisfy the use requirement of 271B, and there are conflicting expert reports, and that shouldn't be resolved against the non-willing party. If you're saying that the PDA of HP, using all sorts of anagrams here, is equivalent to a card, where is the stored personal signature? The stored personal signature is at the central data source. For instance, if I use the PDA to access email, so I would store my PIN code, 1234, at the remote database. You just gave your number away. Right, it won't do you much good. You have to change it. Okay. But anyway, the storage is at the central computer, where the email server is. So that's what Claim 19 says. Then when I take the card out, my device, or his device, or anyone else's device, and I put the number into the device and transmit it by Wi-Fi or by other modem, then I'm comparing the personal signature stored with the personal signature produced, which is what Claim 19 says. So what are you asking for? A remand on equivalence? Remand on equivalence, yes, Your Honor. I note that you wanted to save eight minutes, which is unusual, but your choice, and you have six and a half left. Do you want to continue or save the rest? Just very briefly, Your Honor, the other, as I said, Claim 19 clearly says personal signature. The one paragraph that the court, the district court relied upon, I believe it was column 9, line 25, the quote, the next sentence after that paragraph says you're identifying a user, so you're comparing the signature of the user. When you get email, whether it's my device, Your Honor's device, or someone else's device, it doesn't matter. It's a comparison of the personal signature as per Claim 19. There are no other grounds for affirmance because the collateral estoppel does not apply to DOE. As this court specifically said, it wasn't decided with DOE. And there are conflicting expert reports as to whether or not there is sufficient use in the relevant market to satisfy proof of direct infringement. And that should not be resolved against the non-moving part. Thank you. Mr. Pappas, you're going to split time with Mr. Panikowski. You want eight minutes? Yes, sir. If you run over, you've got to settle with your colleague here. We worked that out. Let me just outline where we would like to go in a clear delineation so there's no duplication at all. On behalf of Microsoft, I would intend to address the proper claim construction, I believe, by Judge Boyd Below of the elements of Claim 19 that are added to Claim 1. And in this case, lack of any evidence against Microsoft, my client, to induce infringement. You said you're going to address the proper claim construction, implying that what the trial court did was not proper. I would have misspoken, Your Honor. I think what I thought I said was I want to address the proprietor, or the fact that Judge Boyd's claim construction was proper, and not improper as contended by my opponent. Mr. Panikowski will intend to address the card limitation and that evidence, or lack thereof, that was attempted to be induced against Hewlett Packard and the specific devices. Let me just say, as you all said, there's a clear line of distinction between my brother and the appellees in this case. They continue to argue that Claim 19 contains words it does not contain. They would have you read Claim 19 to say that there's a comparison of personal signatures to verify the identity of the user. That's not in the claim, and you can't read it in, and there's no support for it in the specification. The claim says you compare a previously stored signature provided by the user at the central computer with a personal signature that's produced by the user to verify use of said card. And Judge Shull, as you quite weakly and properly pointed out, there's no question that Judge Hoyt was saying his opinion was clearly of the fact that it's verifying the use of the card. That's what the claim says. The spec supports that interpretation as we're required to read the claim terms in the context of the entire patent as per Phillips. It is the invention claimed, and indeed, every embodiment in this patent has a presentation of this electronic multifunction card which will someday, I guess, allow us to take away all these credit cards and carry one small card. It's placed into a proprietary terminal, according to the patent, that's at the point of sale. At that time, the personal signature comes up. It's compared, according to Claim 19, with the central computer. That is done to verify the fact that that electronic multifunction card is being used. It does not necessarily identify the user. It's the use of the card. All embodiments in this patent, say that column 9 through column 10, are full of all the embodiments. And not one embodiment in this patent involves anything other than the use of the card. That is the focal point. And, simply put, the only hypothetical that was given by the plaintiffs was the AOL hypothetical, and as we point out in our brief, there is no verification of the use of the device. I want to say here, I think this case may stand in stark contrast to most of the appeals you ever hear, because there is not, as a matter of trial procedure, a scintilla of evidence that anyone ever practiced the method of this patent. However, these claims are construed. Their expert never performed the method, and it was never performed by anyone, and there is no evidence to that effect. And, in the words of this court, I must say, couldn't have said it better, in the EPAS case, where the court wrote, quote, if, as EPAS argues, it is unfathomable that no user in possession of one of the accused devices in its manual has practiced the accused method, EPAS should have had no difficulty in meeting its burden of proof in introducing testimony of even one such user. Unquote. This is trial practice 101. There was and is no evidence in this case that anyone has ever practiced this method. And, turning now solely to the evidence, or lack thereof, as to Microsoft, all that was introduced was a very short white paper and one advertisement. And nowhere in there is each step of the claim method defined or delineated in the order as required by the claim. And, again, interpreting Claim 1 of this patent, as this court did, this court found that such general evidence was insufficient there as it is here, because the steps of the method had to be in one document and had to be in the order that they were set forth. And, in short, again, other than the white paper, that is it in terms of the evidence, and there is no evidence in the record that Microsoft has ever induced anyone to perform the steps of this method. And it's particularly telling in the reported declaration that when he's describing Microsoft, he picks five vague references, none of which talk about storing a personal signature in a central computer and then comparing it at the time of the use of said card. If you overlook the reported effort when he turns to Hewlett Packard, Dr. Laporta stops at the word use. He leaves out said card. That is the weakness, the fundamental weakness in my opponent's position throughout. He doesn't like the terms of his claim because there is no comparison of signatures to verify the use of said card. Mr. Pappas, why shouldn't we remand on equivalence? Your Honor, in my opinion, although Mr. Panikowsky I know will address that in greater detail, as I have looked at the record, there is insufficient evidence produced from which any trial of fact could conclude on an element-by-element basis that there is equivalence here. And it's not sufficient for him to ask for a remand. You're talking about a PDA versus a card, right? Even on the PDA versus a card. There is no comparison of the claim construction by this Court in the first case to the claim device and no testimony by an inventor, by an expert, or by anyone that they are equivalent under any of the tests recognized by this Court. It was EPAS's obligation under Specialist Submit to make an evidentiary profit in the Court to Judge Hoyt either through expert testimony or whatever so that this Court could look at the record and say if those facts were proven at trial, that would be sufficient to submit the issue to the jury. But it's not here. And without that, what really my brother's asking for is give me a remand to do a do-over, reopen fact discovery and expert discovery on the hopes that I might be able to show that. We don't believe he can. But on this record before you, no evidence and it was his burden. Thank you. Mr. Panikowsky, you've even got an extra minute from your co-counsel. Good afternoon, Your Honors. My name is Stanley Panikowsky of D.L.A. Piper and I represent Hewlett Packard Company. Your Honors, the common thread running through the alternative grounds for affirmance as to both Microsoft and HP is EPAS's failure to meet its burden of production of evidence sufficient to commit a reasonable jury to find in its favor on its infringement claims. On the issue of card, Your Honors, EPAS has already conceded that this court's prior decision in EPAS v. 3Com is collateral stop while it's a literal infringement. There should not be a remand on the Doctrine of Equivalence here because EPAS has had this opportunity to place into the record the caliber of evidence that this court requires to survive summary judgment on the Doctrine of Equivalence. And the caliber of evidence required is described by this court. What was the nature of the summary judgment of no infringement? Did it include equivalence? Your Honor, the summary judgment here applied to both literal infringement and the Doctrine of Equivalence. The court, in addressing the issue of whether there was sufficient evidence to permit the jury to conclude that a verified use of, say, card limitation was met, did not go into great detail on the distinction between literal and Doctrine of Equivalence infringement. Rather, the court looked at the plaintiff's utter failure to produce any evidence that could permit anyone, whether literally or by equivalence, to find that here there was any practice of the claim method by anyone with an HP device or that HP or Microsoft intended to induce anyone to practice the methods on the accused device. Your Honor, the standard that this court set forth in the Network Commerce v. Microsoft case for the kind of evidence that's required for a Doctrine of Equivalence  is particularized testimony and linking argument. EPAS has produced no such evidence and certainly has pointed to no such evidence in any of its briefs. EPAS points to no particularized testimony and linking argument that could support an equivalence claim in its appellate brief. And in its summary judgment opposition below, EPAS addressed the Doctrine of Equivalence at pages 2003 and 2004 of the Joint Appendix. EPAS's primary argument was that defendants had not produced any expert testimony showing that there was no infringement by the Doctrine of Equivalence. This, however, Your Honors, seeks to reverse the burden that EPAS must bear and place it on the defendants. In the Supreme Court's Celotax decision, the Court made clear that where the nonmoving party in a summary judgment proceeding bears the burden of proof on an issue at trial, it is enough for the moving party to meet its initial burden on summary judgment simply to point to the fact that the nonmoving party has not produced enough evidence to sustain any essential element of its claims. Then the burden shifts to the nonmoving party, here EPAS, bearing the burden of proof of infringement at trial, to show that there is an issue of trial in fact on every single element of its claims. For the Doctrine of Equivalence, that requires particularized testimony and linking argument on each evidence. The only thing that EPAS pointed to in its summary judgment opposition brief at page A2003 of the Joint Appendix was the expert declaration of Dr. Laporta, where Dr. Laporta made a general statement saying that the function of the card claimed by the patent is to act as a wallet. This is not, in any way, shape, or form, the kind of evidence that this Court has required in cases like Network Commerce v. Microsoft in order to meet a plaintiff's burden on infringement by the Doctrine of Equivalence. Therefore, Your Honors, there is no reason to remand here and to give EPAS a second bite at the apple on equivalence to which it is not entitled. Your Honors, it is also worth noting that EPAS concedes that if the District Court's claim construction is correct on the verified use of state card limitation, then the defendant's prevalence appeal and the decision must be affirmed. Even beyond that, there are failures of production by EPAS that would support affirmance of the judgment in favor of both HP and Microsoft on a number of grounds. Your Honors, as to HP, the only evidence that EPAS has placed in the record in an effort to show any inducement of infringement of the claimed method consists of advertisements from an HP website that speak generally about the product's functionality, including the fact that they can be used to access email, the internet, and corporate data solutions. Nothing in that generalized evidence anywhere teaches all of the elements of Claim 19, much less teaches those elements in the required order. In this sense, Your Honors, the caliber of evidence presented by EPAS in this case is precisely the same as the type of evidence that EPAS presented in the FREECOM case, and which this court found to be insufficient because it required two speculative elite for the court to look at these documents talking about general functionalities and these user manuals which may or may not have certain elements of the claim embedded in various pieces, but where there was nothing in the manual that put all of these pieces together and permitted an inference that anyone directly infringed, or even the inference that HP had a specific intent to encourage anyone to infringe, as this court requires in DSU. Your Honors, it is not possible for a plaintiff to take certain evidence and then try to read into that evidence claim elements that are not there. EPAS has argued that this case is different from the FREECOM case simply because it has provided an expert declaration on the question of whether anyone practices the claim steps of Claim 19. As my colleague noted, there is simply no evidence in the record that anyone ever practiced these limitations, and expert testimony cannot make it so. It is very telling that the expert himself never tried to practice the elements of Claim 19 with any HP device. In the expert report at pages A-2051-2058 of the joint appendix, the expert never even purports to put all the pieces together here in the required order, but instead picks out the scattered pieces of the manual and tries to say that those scattered pieces somehow, number one, teach somebody to practice the method, number two, permit the inference that somebody actually practiced it, and number three, permit the inference that HP had a specific intent to encourage infringement. It would do no good for me to have an expert stand next to me and say that there are nine judges on this bench today. An expert saying so would make that inference no more reasonable than the mere fact that there are only three judges on this bench today. Your Honors, for these reasons, HP respectfully requests that you affirm the judgment of the district court. Thank you. Can I ask just one question? I think I know your answer to this, but it would help me if you'd frame what it is that, in your view, of the proper construction of Claim 19. Describe for me exactly what you think that claim reads on. Tell me the kind of device that would fit comfortably within the scope of that claim as you conceive it. Your Honor, with respect to the card limitation, I think that the specification of the patent, though not limited to its embodiments, gives examples of devices that may fit what the claims seek to cover. In this case, however, Your Honor, for the reasons that were given in the 3Com2 opinion, the accused HP devices simply do not permit I don't think you're answering the question. Really, I'm looking for describe an embodiment that, in your view, would clearly fall within the scope of Claim 19 by structure and function. Your Honor, in terms of the structure and function, I think that in this case, there is very, very little, if any, room for an equivalent here. I'm really asking let's move away from the facts of this case. I want, in view of your view of the proper claim construction of Claim 19, describe a device with certain functionality which would clearly fit within that claim construction. Your Honor, I think a device that was exactly the size and dimensions of a credit card that had the capability for someone to perform each of the steps of Claim 1 in order and then each of the steps of Claim 19 in order is a device that would permit that. Each of the steps, but that's the core. I mean, what you're saying then is a device would infringe if it performed all the steps of the claims. Yes, Your Honor. I'm looking for a little more. Describe, for example, what it is you think exactly is entailed in the language verifying use of said card. What exactly do you think that's restricted to? Yes, Your Honor. And I apologize for not understanding the question. Well, the question may have been a little opaque, but... No, I'm sorry. You've got it now. Your Honor, I think that the limitation to verified use of said card means that when the method of Claim 19 is performed, that there is a comparison of personal signatures that enables the third-party data source to confirm that a particular device is being used. For example, if someone were to say to me, would you please go into the next room and confirm that my son is playing a video game, and I were to come back and report that, yes, that is your son in there, that would not answer the question that that person posed. And in the same way, it doesn't meet the limitations of Claim 19 simply to verify that a particular person is conducting a particular transaction. Rather, there needs to be a mechanism whereby the third-party central computer that issued the data source can verify that not only is it a particular user, who is trying to access an account or conduct a transaction, but rather that that person is using a particular device, i.e., the card that is claimed in Claims 1 and 19 of the 311 Act. So both? Both card and identification of user? Yes, Your Honor, and those two are not mutually exclusive. Yes, Your Honor. Thank you, Mr. Panikowski and Mr. Weiss. We have a little time. Hi, Carol. First, this Court asked Mr. Panikowski if the decision below addressed the doctrine of equivalence, and Mr. Panikowski said yes, but I believe that's incorrect that we at the Court below did not address the doctrine of equivalence in Judge White's decision. Second, with respect to issues of specific intent, I think the answer probably was not that the Court specifically addressed it, but that its conclusion encompassed it. Rationally. With respect to whether or not the doctrine of equivalence was argued in the summary judgment motions below although not discussed in Judge White's opinion, in addition to the pages cited by Mr. Panikowski, there's a section in the appendix on page A1905 that starts with the discussion of the issue of whether or not there is a DOE, and in that section it also quotes from the defendant's expert Alan Ratliff, who specifically said that the patent describes a method to be practiced on a pocket-sized electronic multifunction card variously referred to as an e-wallet or smart card, and that's the defendant's expert talking about the device of an electronic multifunction card being an equivalent. But that whole section deals with the doctrine of equivalence. It was briefed in the court below. With respect to evidence of the advertisements, the Chimanata case talked about advertisements can be sufficient, obviously, to induce. There's discussion of that in Mr. Braddock's report, which is a record. He's one of the defendant's economic experts. There's a discussion of it in Professor Laporta's report about the advertisements and the user manuals and the post-purchase support, and there's also a discussion of it in Professor Johnson's defendant's experts report. And Your Honor asked about what the proper... what a device would be doing if it... if you used it to practice Claim 19. Professor Johnson, in his expert report, disagreed with Professor Laporta on using Claim 19 as a method of accessing email. What Professor Johnson said is that if you store a digital signature or PIN code at a remote database, such as AOL or Microsoft Now, and then you go to retrieve it by producing that digital signature using the electronic multifunction card, that you don't necessarily transmit the same code. It may be encrypted or there may be questions asked in the exchange with the two devices. But both experts agreed that you may be using the Claim 19 method. It's just that Professor Laporta said you must if you use the device for email, and Professor Johnson said you may. So these are issues of fact that would have to be resolved by a jury. These are not issues to be resolved against a non-moving party. But I would respectfully submit that there is ample evidence on the DOE. It was briefed in the court below. There's ample evidence of advertisements, one- and two-page advertisements, that spell out every single step of the patent. They're all referred to in Professor Laporta's report, which is off record. But we did brief the doctrine of equivalence. And the court below specifically construed Claim 19 to require identification of the device or card being used as opposed to the identification of the person using it. And the whole purpose of protecting access to the data is to make sure that only the authorized person is the one that can gain access. That's the whole purpose of Claim 19. And it's the whole reason that each time a signature is used in Claim 19, it's his personal signature. It doesn't say identification of the card or CID number or serial number. It's his personal signature. If there's no more questions, thank you. Thank you, Mr. Weiss. Case will be taken under advisement.